IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HARVEY KNIGHT,

    Petitioner,　　　　　　　　　　No. 2:10-cv-2419 WBS KJN P

  vs.

GARY SWARTHOUT, Warden,

    Respondent.　　　　　　　　　　FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

    Petitioner is a state prisoner proceeding without counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner claims that his federal constitutional right to due process was violated by a 2009 decision of the California Board of Parole Hearings (hereafter "the Board") to deny him a parole date. Petitioner also claims that the Board applied Marsy's Law in violation of the Ex Post Facto Clause. After review of the record, this court finds the petition should be denied.

II. Standards for a Writ of Habeas Corpus

    Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

////

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations omitted).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court reaches a decision on the merits, but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

1  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) ("Independent review of the record is not de
2  novo review of the constitutional issue, but rather, the only method by which we can determine
3  whether a silent state court decision is objectively unreasonable."); accord Pirtle v. Morgan,
4  313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached the
5  merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's
6  deferential standard does not apply and a federal habeas court must review the claim de novo.
7  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle, 313 F.3d at 1167.

8  III.  Petitioner's Claims

9        A.  Due Process

10      Petitioner contends that his federal constitutional right to due process was violated
11  by a 2009 decision of the Board to deny him a parole date.

12      The Due Process Clause of the Fourteenth Amendment prohibits state action that
13  deprives a person of life, liberty, or property without due process of law.  A litigant alleging a
14  due process violation must first demonstrate that he was deprived of a liberty or property interest
15  protected by the Due Process Clause and then show that the procedures attendant upon the
16  deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,
17  490 U.S. 454, 459-60 (1989).

18      A protected liberty interest may arise from either the Due Process Clause of the
19  United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an
20  expectation or interest created by state laws or policies."  Wilkinson v. Austin, 545 U.S. 209,
21  221 (2005) (citations omitted).  The United States Constitution does not, of its own force, create
22  a protected liberty interest in a parole date, even one that has been set.  Jago v. Van Curen,
23  454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 7 (1979) (There is
24  "no constitutional or inherent right of a convicted person to be conditionally released before the
25  expiration of a valid sentence.").  However, "a state's statutory scheme, if it uses mandatory
26  language, 'creates a presumption that parole release will be granted' when or unless certain

designated findings are made, and thereby gives rise to a constitutional liberty interest." Greenholtz, 442 U.S. at 12; see also Board of Pardons v. Allen, 482 U.S. 369, 376-78 (1987) (a state's use of mandatory language ("shall") creates a presumption that parole release will be granted when the designated findings are made.).

California's parole statutes give rise to a liberty interest in parole protected by the federal due process clause. Swarthout v. Cooke, 562 U.S. ___ (2011), No. 10-333, 2011 WL 197627, at *2 (Jan. 24, 2011). In California, a prisoner is entitled to release on parole unless there is "some evidence" of his or her current dangerousness. In re Lawrence, 44 Cal.4th 1181, 1205-06, 1210 (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002). However, in Swarthout the United States Supreme Court held that "[n]o opinion of [theirs] supports converting California's 'some evidence' rule into a substantive federal requirement." Swarthout, 2011 WL 197627, at *3. In other words, the Court specifically rejected the notion that there can be a valid claim under the Fourteenth Amendment for insufficiency of evidence presented at a parole proceeding. Id. at *3. Rather, the protection afforded by the federal due process clause to California parole decisions consists solely of the "minimal" procedural requirements set forth in Greenholtz, specifically "an opportunity to be heard and . . . a statement of the reasons why parole was denied." Swarthout, at *2-3.

Here, the record reflects that petitioner was present at the 2009 parole hearing, that he participated in the hearing, and that he was provided with the reasons for the Board's decision to deny parole. (Dkt. No. 10-1 at 2-100; 10-3 at 28-38.) According to the United States Supreme Court, the federal due process clause requires no more. Accordingly, this claim should be denied.

B. Marsy's Law

Petitioner contends that the Board's application of "Marsy's Law" (adopted by the voters pursuant to Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law") to delay for three years his next parole hearing, violated the Ex Post Facto Clause of the United

4

States Constitution.  Under the statute as it existed prior to the enactment of "Marsy's Law," indeterminately-sentenced inmates, like petitioner,[1] were denied parole for one year unless the Board found, with stated reasons, that it was unreasonable to expect that parole could be granted the following year, in which case the subsequent hearing could be extended up to five years.  Cal. Penal Code § 3041.5(b)(2) (2008).  However, at his 2009 parole hearing, petitioner was subject to the terms of the amended statute, which authorizes denial of a subsequent parole hearing for a period up to fifteen years.  Cal. Pen. Code, § 3041.5(b)(3) (2010).  The shortest interval that the Board may set is three years, applied to petitioner herein (Dkt. No. 1 at 10), based on a finding that the prisoner "does not require a more lengthy period of incarceration . . . than seven additional years," Cal. Pen. Code, § 3041.5(b)(3)(C).

Petitioner asserts that application of the extended deferral period violates the Ex Post Facto Clause because it increases the risk that petitioner will suffer longer punishment than he would have received under the prior statute, because it changed the presumption that a person sentenced to an indeterminate sentence would be considered for parole annually. (Dkt. No. 1 at 25.)

On April 10, 2010, the Los Angeles Superior Court issued the last reasoned opinion addressing this claim:

> The Board may properly apply the 2008 law as set forth in Art. I Sec. 28 of the California Constitution and Cal. Pen. Code § 3041.5. The new standard does not trigger *ex post facto* concerns because it does not change the applicable indeterminate term, the formula for earning sentence reduction credits, or the standards for determining either the initial date of parole eligibility or the prisoner's suitability for parole. (*John L. v. Superior Court* (2004) 33 Cal.4th 158, 181-182; see also *Cal. Dep't of Corr. v. Morales* (1995) 514 U.S. 499, 512-513 [rejecting a claim that a post-conviction change

////

---

[1] Petitioner is serving an indeterminate sentence of life in prison, plus five years, with the possibility of parole, based on a 1988 conviction for three counts of attempted first degree murder, first degree robbery, attempted first degree robbery, and three counts of assault with a firearm.

5

in the frequency of parole suitability hearings violated the ex post facto clause of the U.S. Constitution].)

(Dkt. No. 1 at 24.)

The Constitution provides that "No State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10. A law violates the Ex Post Facto Clause if it: (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a person of a defense available at the time the crime was committed. Collins v. Youngblood, 497 U.S. 37, 52 (1990). The Ex Post Facto Clause is also violated if: (1) state regulations have been applied retroactively to a defendant; and (2) the new regulations have created a "sufficient risk" of increasing the punishment attached to the defendant's crimes. Himes v. Thompson, 336 F.3d 848, 854 (9th Cir. 2003). Not every law that disadvantages a defendant is a prohibited ex post facto law. In order to violate the Clause, the law must essentially alter "the definition of criminal conduct" or increase the "punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441-42 (1997); Souch v. Schaivo, 289 F.3d 616, 620 (9th Cir. 2002).

California Penal Code section 3041.5 has been amended several times since the date of petitioner's conviction to allow for longer periods of time between parole suitability hearings. Ex post facto challenges to those amendments have all been rejected. See e.g. California Dep't of Corrections v. Morales, 514 U.S. 499, 509 (1995) (1981 amendment to Section 3041.5, which increased maximum deferral period of parole suitability hearings to five years did not violate the Ex Post Facto Clause because it simply altered the method of setting a parole release date and did not create a meaningful "risk of increasing the measure of punishment attached to the covered crimes"); Watson v. Estelle, 886 F.2d 1093, 1097-98 (9th Cir. 1989) (not a violation of the Ex Post Facto Clause to apply Section 3041.5(b)(2)(A) to prisoners sentenced to life imprisonment prior to the 1977 implementation of California's Determinate Sentence Law); Clifton v. Attorney General Of the State of California, 997 F.2d 660, 662 n.1 (9th Cir.

1993) (same); see also Garner v. Jones, 529 U.S. 244, 249 (2000) (upholding Georgia's change in the frequency of parole hearings for prisoners serving life sentences, from three to eight years).

Recently the Ninth Circuit overturned a district court decision granting preliminary injunctive relief to plaintiffs in a class action seeking to prevent the Board from enforcing the amended deferral periods established by Marsy's Law. Gilman v. Schwarzenegger, ___F.3d___, 2011 WL 198435 (9th Cir., Jan. 24, 2011). The court found it unlikely that plaintiffs would succeed on the merits of their underlying challenge premised on the Ex Post Facto Clause. The court initially compared and contrasted Marsy's Law with existing Supreme Court precedent:

> Here, as in Morales and Garner, Proposition 9 did not increase the statutory punishment for any particular offense, did not change the date of inmates' initial parole hearings, and did not change the standard by which the Board determined whether inmates were suitable for parole. However, the changes to the frequency of parole hearings here are more extensive than the change in either Morales or Garner. First, Proposition 9 increased the maximum deferral period from five years to fifteen years. This change is similar to the change in Morales (i.e., tripled from one year to three years) and the change in Garner (i.e., from three years to eight years). Second, Proposition 9 increased the minimum deferral period from one year to three years. Third, Proposition 9 changed the default deferral period from one year to fifteen years. Fourth, Proposition 9 altered the burden to impose a deferral period other than the default period. . . . Neither Morales nor Garner involved a change to the minimum deferral period, the default deferral period, or the burden to impose a deferral period other than the default period.

Gilman, 2011 WL 198435, at * 5. The Ninth Circuit found these distinctions insignificant due to the availability of advance parole hearings at the Board's discretion (sua sponte or upon the request of a prisoner, the denial of which is subject to judicial review), reasoning that, "as in Morales, an advance hearing by the Board 'would remove any possibility of harm' to prisoners because they would not be required to wait a minimum of three years for a hearing." Id. at *6, quoting Morales, 514 U.S. at 513. The court concluded that plaintiffs had failed to demonstrate a significant risk that their incarceration would be prolonged by application of Marsy's Law, and

////

thus found that plaintiffs had not established a likelihood of success on the merits of their ex post facto claim.

In addition to these preliminary conclusions by the Ninth Circuit that Marsy's Law does not appear to violate the Ex Post Facto Clause, at least one district court has dismissed a petitioner's challenge to the law on the ground that it improperly duplicates the class action claim still pending on the merits in Gilman.  See e.g. Bryant v. Haviland, 2011 WL 23064, *2-5,15 (E.D. Cal., Jan. 4, 2011).  That court noted that petitioner therein, as here, appears to be a member of the Gilman class "of prisoners convicted of murder and serving a sentence of life with the possibility of parole with at least one parole denial . . . challeng[ing] the state procedures denying class members parole as well as their deferred parole suitability hearings following a finding of parole unsuitability."  Id. at *5.  Relying on established precedent precluding a member of a class action from seeking, in an individual action, equitable relief that is also sought by the class, see e.g. Crawford v. Bell, 599 F.2d 8990, 892-93 (9th Cir. 1979), the court dismissed petitioner's claim.

In light of these cases, the state court's rejection of petitioner's first claim for relief was neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent.  Therefore, petitioner is not entitled to relief in this action on his ex post facto claim.

IV.  Conclusion

For all of the above reasons, the undersigned recommends that petitioner's application for a writ of habeas corpus be denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 14, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

knig2419.157